## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

PREMIER RENTAL-PURCHASE, INC.
5248 Olde Towne Road, Suite 11
Williamsburg, Virginia 23188,

THE PREMIER COMPANIES, INC.
5248 Olde Towne Road, Suite 11
Williamsburg, Virginia 23188

               Plaintiffs,

     v.

TOP GUN RENTALS, INC.,

Serve:  Matthew B. Koen, President
        1690 N. Bowen Drive
        Pueblo West, Colorado 81007

MATTHEW B. KOEN,
1690 N. Bowen Drive
Pueblo West, Colorado 81007,

JAMES D. SINGLETON
776 E. Paseo Dorado Dr.
Pueblo West, Colorado 81007

             Defendants.



FILED

JAN 16 2013

CLERK, US DISTRICT COURT
NEWPORT NEWS VA

Civil Action No.: 4:13-CV-10

## COMPLAINT

This is an action for service mark infringement and breach of contract arising out of the defendants' continued operation of a rent-to-own business after the expiration of the franchise agreement between the parties in violation of their post-termination covenant not against competition. The plaintiffs seek injunctive relief, their damages, and their attorneys' fees and costs associated with this action.

The defendant, Top Gun Rentals, Inc. ("Top Gun"), operated a franchised PREMIER rent-to-own store in Pueblo, Colorado under service marks owned by plaintiff The Premier Companies, Inc. ("TPC") and licensed by plaintiff Premier Rental-Purchase, Inc. ("Premier"), the franchisor of the PREMIER rent-to-own system.   On November 10, 2012, the franchise agreement between Premier and Top Gun expired by its own terms.

Despite the expiration of the franchise agreement and its right to use TPC's and Premier's proprietary marks, trade dress and operating system, Top Gun continued to operate the formerly-licensed rent-to-own store using the PREMIER name and service marks for almost two months. Although Top Gun has, at least temporarily, cease its unlicensed use and infringement of the PREMIER name and service marks, Top Gun has continued operating a rent-to-own store at the same location in violation of its contractual agreement not to operate a competing business for one year after expiration of the franchise agreement.   Top Gun's breach of its covenant threatens both to usurp the customer goodwill associated with the PREMIER name and marks and to preclude Premier from relicensing a new franchisee in the area.   Accordingly, TPC and Premier seek injunctive relief (1) to prevent any further infringement of its marks and (2) to protect Premier's customer relationships and goodwill in the Pueblo, Colorado market, in addition to monetary relief.

## THE PARTIES

1.     Premier is a Virginia corporation with its principal place of business in Williamsburg, Virginia.

2.     TPC is a Virginia corporation with its principal place of business in Williamsburg, Virginia.

3. On information and belief, defendant Top Gun is a Colorado corporation with its principal place of business in Pueblo, Colorado.

4. On information and belief, defendant Matthew B. Koen is a citizen of the State of Colorado, an owner and officer of Top Gun, and a personal guarantor of Top Gun's obligations under the expired franchise agreement between Premier and Top Gun.

5. On information and belief, defendant James D. Singleton is a citizen of the State of Colorado and a personal guarantor of Top Gun's obligations under the expired franchise agreement between Premier and Top Gun.

## JURISDICTION AND VENUE

6. This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and the contracts between the parties.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367 and 15 U.S.C. §§ 1116 and 1121.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this District, and pursuant to the agreements between the parties, in which they agreed to jurisdiction and venue in this District.

## THE PREMIER RENT-TO-OWN SYSTEM

9. Premier is the franchisor of the PREMIER rent-to-own franchise system. Pursuant to an exclusive license from TPC to use the PREMIER name and service marks (the "PREMIER Marks"), Premier operates and licenses others to operate rent-to-own businesses using the PREMIER name and service marks. Franchised PREMIER rent-to-own businesses are operated in accordance with Premier's business and operating procedures.

10.    The PREMIER Marks include the following service marks registered in the

United States Patent and Trademark Office:

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| PREMIER RENTAL-PURCHASE | 3,210,327 | February 20, 2007 | Retail store services featuring televisions, household electronics, stereos, VCR players, DVD players, television home videos, computers, household appliances and home accessories in International Class 35. |
| | | | Rental of household appliances, namely, clothes washing machines, clothes drying machines, and dishwashers in International Class 37. |
| | | | Rental of household appliances, namely, freezers and refrigerators in International Class 39. |
| | | | Rental of household electronics, namely, televisions, stereos, VCR players, DVD players, camcorders, digital cameras, home videos; rental of home accessories, namely, artwork in International Class 41. |
| | | | Rental of computers in International Class 42. |
| | | | Rental of household appliances, namely, microwaves and stoves; rental of home accessories, namely, lamps and mirrors in International Class 43. |
| PREMIER HOME FURNISHINGS | 3,565,059 | January 20, 2009 | Retail store services featuring televisions, household electronics, stereos, VCR players, DVD players, television home videos, computers, household appliances, home accessories, and furniture in International Class 35 |

These registrations are valid and fully enforceable.

11.    In addition to using the PREMIER Marks, franchised PREMIER rent-to-own

stores are operated in association with Premier's trade dress, in accordance with Premier's

standards, specifications and methods relating to the operation of a rent-to-own business, using

business materials and know-how provided by Premier (the "Premier System").

12.   The standards, specifications and methods of the Premier System are set forth in Premier's confidential and proprietary operations manual, a copy of which is provided to all Premier franchisees (the "Manual"). The Manual includes detailed standards, specifications, instructions, requirements, methods and procedures for opening, operating, marketing, and managing a franchised PREMIER rent-to-own store.

## THE FRANCHISE AGREEMENT BETWEEN THE PARTIES

13.   On November 10, 2007, Premier and Top Gun entered into a franchise agreement (the "Franchise Agreement") governing the operation of a PREMIER rent-to-own store at 935 U.S. Highway 50 West, Pueblo, Colorado 81008 (the "Store"). A true and correct copy of the Franchise Agreement is attached hereto as Exhibit 1.

14.   Concurrent with Top Gun's execution of the Franchise Agreement, Koen and Singleton executed a "Guarantee" (the "Guarantee"), pursuant to which Koen and Singleton jointly and severally guaranteed Top Gun's full performance and discharge of all of Top Gun's obligations under the Franchise Agreement. Pursuant to the Guarantee, Koen and Singleton also personally agreed to indemnify Premier from all losses and expenses resulting from any failure by Top Gun to perform any obligation under the Franchise Agreement. A true and correct copy of the Guarantee is attached as Exhibit 2

15.   Concurrent with Top Gun's execution of the Franchise Agreement, Koen and Singleton also each executed an "Individual's Covenant Concerning Confidentiality and Non-Competition" (the "Individual Non-Competes"), pursuant to which both Koen and Singleton both agreed to refrain from owning or operating a competing rent-to-own business while associated with Top Gun or for a one-year period after ending its association with Top Gun.

16.    Pursuant to Sections 2.1 and 2.2 of the Franchise Agreement, unless earlier terminated, the Top Gun was licensed to operate the Store as a PREMIER rent-to-own business for a period of 5 years from the date of the Franchise Agreement (or November 10, 2007), with the option to extend the original term for two additional 5 year terms, upon the fulfillment of certain conditions.

17.    Pursuant to Sections 4 of the Franchise Agreement, Top Gun was obligated to make certain payments to Premier, including licensing and marketing fees, which were based on a percentage of gross sales, and convention fees, which was a flat fee. Payments from Top Gun were to be made monthly via electronic funds transfer to Premier through a pre-authorized bank draft. Top Gun was also required to pay interest if its payments were overdue, as well as reimburse Premier for any cost incurred to collect amounts owed.

## THE EXPIRATION OF THE FRANCHISE AGREEMENT

18.    Beginning in July 2012, Top Gun began periodically to cease making the monthly payments due to Premier pursuant to Section 4 of the Franchise Agreement.

19.    Prior to expiration of the Franchise Agreement on November 10, 2012, Premier forwarded to Top Gun a new form of franchise agreement to execute in the event Top Gun wished to exercise its right to renew the franchise license. Premier conditioned any renewal on Top Gun paying the amounts owed to Premier prior to execution.

20.    Top Gun declined to pay the amounts owed to Premier, execute the new franchise agreement, or otherwise take action to exercise its right to renew the franchise.

21.    As a result, the term of the Franchise Agreement was not renewed and the Franchise Agreement expired on November 10, 2012. At the time of expiration, Tog Gun owed Premier $4,058.88.

## THE DEFENDANTS' BREACH OF THE
## POST-TERMINATION PROVISIONS OF THE FRANCHISE AGREEMENT
## AND UNAUTHORIZED USE OF THE PREMIER MARKS

22.    Pursuant to Section 14 of the Franchise Agreement, upon expiration, Top Gun and expressly agreed (and Koen and Singleton expressly agreed pursuant to the Guarantee) that it would: (1) immediately cease operating the Store as a PREMIER rent-to-own business; (2) discontinue all use of the PREMIER Marks and the Premier System; (3) discontinue use of all confidential methods, procedures, and techniques and all distinctive forms, slogans, signs, symbols, and devices associated with the Premier System; (4) remove the PREMIER Marks (and all materials displaying those Marks) and trade dress from the Store; (5) cease all marketing for the Store using the PREMIER Marks; and (6) and make such alterations and modifications to the Store necessary to distinguish to the public the Store from its former appearance as a PREMIER rent-to-own store.

23.    Top Gun further agreed (and Koen and Singleton agreed pursuant to the Guarantee) further agreed that it would immediately pay Premier all sums due and owing.

24.    Top Gun also agreed (and Koen and Singleton agreed pursuant to the Guarantee) that, upon termination, it would promptly return to Premier the Manual (and any copies), and all other materials containing confidential information (including any copies of such materials) which were furnished by Premier and which are Premier's property.

25.    In addition, Top Gun agreed that, for a period of one year following expiration of the Franchise Agreement, Top Gun would not, at the location of the Store or within the DMA of the Store, directly or indirectly "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with any business which is the same or similar to the Store." Ex. 1 § 15.3.

26.    As a consequence Top Gun choosing to allow the Franchise Agreement to expire, Top Gun was required to abide by these post-termination obligations. As guarantors, Koen and Singleton also agreed to abide by and undertake these obligations on Top Gun's behalf.

27.    After expiration of the Franchise Agreement on November 10, 2012, Top Gun, Koen, and Singleton continued to operate the formerly-franchised Store using the PREMIER Marks and Premier System and continued to offer services at the Store that are the same or similar to the services that were offered under the Franchise Agreement.

28.    December 20, 2012, counsel for Premier sent Top Gun, Koen, Singleton by Federal Express, a demand that the Top Gun immediately cease and desist from all further use of the Premier Marks, trade dress and other indicia of a legitimate PREMIER franchised rent-to-own business. Premier notified Top Gun, Koen and Singleton that the continued use of the PREMIER Marks, trade dress and other proprietary features of the PREMIER System constituted service mark infringement, unfair competition and a violation of the post-termination obligations of the Franchise Agreement. Premier's counsel also demanded that Top Gun, Koen, and Singleton pay all then-outstanding amounts, totaling $5,411.82.

29.    Thereafter, on January 7, 2013, Top Gun ceased using the PREMIER Marks. However, Top Gun continued to operate the formerly-franchised Store as a rent-to-own business, offering the same services to the same customers that were offered under the Franchise Agreement.  Top Gun is also continuing to use a telephone number associated with the PREMIER Marks. In addition, Top Gun also failed to pay the amounts owed to Premier, which are continuing to accrue interest.

30.    The defendants' failure to abide by the post-termination obligations required under the Franchise Agreement, their continued use of the PREMIER Marks, System and other

confidential and proprietary information belonging to Premier after expiration of the Franchise

Agreement, has caused, and is continuing to cause, irreparable harm to Premier.

## COUNT ONE

### (Breach of Contract - Franchise Agreements)

31.     Premier realleges Paragraphs 1-30 of this Complaint.

32.     Top Gun's failure to pay licensing fees, marketing fees, convention fees, and

interest on past-due amounts for the Store constitutes a breach of the Franchise Agreement.

33.     Premier has been damaged by Top Gun's breach of the Franchise Agreement in

an amount to be proved at trial, but not less than $6,088.84, plus interest.

34.     As guarantor of Top Gun's monetary obligations under the Franchise Agreement,

Koen and Singleton are jointly and severally liable for Top Gun's breach of its payment

obligations.

## COUNT TWO

### (Breach of Contract - Post-Termination Obligations)

35.     Premier realleges Paragraphs 1-34 of this Complaint.

36.     Despite the valid termination of the Franchise Agreement, the defendants failed to

close the Store.  Instead, the defendants continued to operate the Store using the PREMIER

Marks for a period of time in violation of Section 14 of the Franchise Agreement.

37.     The defendants have further breached Section 14 of the Franchise Agreement by

failing to pay all sums owing to Premier.

38.     The defendants have also breached the Section 14 of the Franchise Agreement by

continuing to use telephone numbers, directory listings and other advertising materials displaying

or associated with the Premier Marks.

39.     The defendants have also breached the post-termination covenant against competition in Section 15 of the Franchise Agreements by operating the Store as a rent-to-own business at the same location that Top Gun was previously licensed to operate under the Franchise Agreement.

40.     Under the Guarantee, Koen and Singleton expressly agreed that they would guarantee Top Gun's performance of all obligations of the Franchise Agreement, including Top Gun's obligations pursuant to Sections 14 and 15 of the Agreement.  Koen and Singleton are jointly and severally liable for Top Gun's breaches of those obligations.

41.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to Premier and TPC, the Premier Marks and the Premier franchise system.

42.     In addition, Premier has sustained actual damages, costs, and attorneys' fees as a result of the defendants' breach of the contractual post-termination obligations in an amount that has yet to be determined.

## COUNT THREE

### (Service Mark Infringement)

43.     Premier and TPC reallege Paragraphs 1-42 of this Complaint.

44.     Top Gun's use of PREMIER Marks without authorization or license from Premier or TPC after expiration of the Franchise Agreement has likely caused confusion in the public mind concerning the source, affiliation, or sponsorship of services Top Gun offered under the PREMIER Marks.

45.     Consumers have likely believed, contrary to fact, that Top Gun is an authorized licensee of Premier or TPC and that the Store continued to be a legitimate member of the Premier franchise system.

- 10 -

46.     Top Gun willfully, intentionally, and knowingly has used service marks and designations that are identical to, substantially indistinguishable from, or confusingly similar to the PREMIER Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     On information and belief, Koen and Singleton have caused Top Gun to engage in this infringing activity and are therefore are contributory infringers in violation of the Lanham Act.

48.     The defendants' conduct has caused irreparable injury to Premier's and TPC's reputations and goodwill, and will continue to cause irreparable injury to the extent the defendants' continue or resume their infringement.

49.     In addition, the defendants' conduct has caused monetary damage to Premier and TPC, and will cause addition monetary damage if it continues or resumes, in an amount to be proved at trial.

## COUNT FOUR

### (Federal Unfair Competition)

50.     Premier and TPC reallege Paragraphs 1-49 of this Complaint.

51.     Top Gun's unauthorized use of the Premier Marks and trade dress and holding itself out as duly licensed member of the Premier franchise system after expiration of the Franchise Agreement constitute false designation of origin, false advertising, false or misleading descriptions of fact, and false or misleading representations of fact, which were likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between Top Gun and Premier and TPC, or as to the origin, sponsorship, or approval of the services offered by Top Gun, or as to Premier's or TPC's approval of Top Gun's commercial activities.

52.     Top Gun's conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

53.     Upon information and belief, Koen and Singleton have caused Top Gun to engage in this activity and are therefore liable to the same extent as Top Gun under the Lanham Act.

54.     The defendants' conduct has caused irreparable injury to Premier's and TPC's reputations and goodwill, and will continue to cause irreparable injury to the extent the defendants' continue or resume their infringement.

55.     In addition, the defendants' conduct has caused monetary damage to Premier and TPC, and will cause addition monetary damage if it continues or resumes, in an amount to be proved at trial.

## COUNT FIVE

### (State Law Service Mark Infringement)

56.     Premier and TPC reallege Paragraphs 1-55 of this Complaint.

57.     The PREMIER Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the PREMIER Marks as identifying the operation of rent-to-own businesses by Premier and its franchisees. The PREMIER Marks have become known by the public as indicative of the services provided by TPC, Premier, and Premier's franchisees at PREMIER rent-to-own businesses.

58.     The public likely has been confused, deceived or otherwise manipulated by Top Gun's unauthorized use of the PREMIER Marks. Therefore, Top Gun's use of the PREMIER Marks without right, license, or authorization constitutes service mark infringement under the laws of the Commonwealth of Virginia.

59.     Upon information and belief, Koen and Singleton are causing Top Gun to engage in this infringing activity and are therefore liable to the same extent as Top Gun for this infringing activity.

60.     The defendants' conduct has caused irreparable injury to Premier's and TPC's reputations and goodwill, and will continue to cause irreparable injury to the extent the defendants' continue or resume their infringement.

61.     In addition, the defendants' conduct has caused monetary damage to Premier and TPC, and will cause addition monetary damage if it continues or resumes, in an amount to be proved at trial.

## COUNT SIX

### (State Law Unfair Competition)

62.     Premier and TPC reallege Paragraphs 1-62 of this Complaint.

63.     Top Gun's conduct constitutes unfair competition under applicable state law.

64.     Upon information and belief, Koen and Singleton are causing Top Gun to engage in this activity and are therefore liable to the same extent as Top Gun for this activity.

65.     The defendants' conduct has caused irreparable injury to Premier's and TPC's reputations and goodwill, and will continue to cause irreparable injury to the extent the defendants' continue or resume their infringement.

66.     In addition, the defendants' conduct has caused monetary damage to Premier and TPC, and will cause addition monetary damage if it continues or resumes, in an amount to be proved at trial.

## COUNT SEVEN

### (Unjust Enrichment)

67.     Premier and TPC reallege Paragraphs 1-67 of this Complaint.

68.     The defendants' unauthorized use of the PREMIER Marks in operating the Store and holding themselves out as duly-licensed members of the Premier franchise system has resulted in the unjust enrichment of the defendants in an amount that has yet to be determined.

## COUNT EIGHT

### (Action on Personal Guaranty)

69.     Premier realleges Paragraphs 1-68 of this Complaint.

70.     By executing the Guarantee, Koen and Singleton jointly and severally guaranteed Top Gun's obligations, agreed to make all payments due to Premier that were due under the Franchise Agreement, and agreed to indemnify Premier for all damages, losses or expenses incurred by Premier as a result of Top Gun's failure to comply with its contractual obligations.

71.     Premier provided written notice to Koen and Singleton that Top Gun had failed to pay amounts owed to Premier and had failed to comply with its post-termination contractual obligations.  Premier demanded that Koen and Singleton pay those amounts and ensure Top Gun's compliance with its contractual obligations.

72.     Koen and Singleton are obligated jointly and severally under the Guarantee to pay Premier all amounts owed by Top Gun under the Franchise Agreement, in an amount to be proven at trial, but not less than $6,088.84.

73.     Koen and Singleton are obligated jointly and severally under the Guarantee to indemnify and pay Premier for any damages, losses or expenses Premier incurs from Top Gun's failure to comply with its contractual obligations, in an amount to be proven at trial.

- 14 -

## PRAYER FOR RELIEF

**WHEREFORE,** Premier and TPC demand entry of judgment in their favor awarding the following relief:

1.      Awarding Premier the amounts owed under the Franchise Agreement, which amount is no less than $6,088.84, plus interest, under the terms of the Franchise Agreement through the date of entry of judgment;

2.      Awarding Premier its damages resulting from the defendants' breach of the post-termination obligations of Franchise Agreement, in an amount to be proved at trial;

3.      Preliminarily and permanently enjoining the defendants, and all those acting in concert or privity with any or all of them, including any of their agents, servants, employees, and attorneys, from:

(a)      using the PREMIER Marks or the Premier System, in any manner whatsoever, including, without limitation, in connection with the advertising, promotion or sale of any product or service, and including, without limitation, all signs, furniture, fixtures, equipment, décor, advertising materials, stationary, forms, and any other articles that display the PREMIER Marks;

(b)      operating any business under the name PREMIER or operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that any business in which the defendants have any interest or connection is licensed by TPC or Premier or otherwise associated with the Premier franchise system;

(c)      failing to make any changes and alterations to their formerly-licensed premises required to de-identify the businesses;

(d)      failing to cancel all telephone numbers, directory listings and other advertisements that refer to or are associated with the PREMIER Marks;

(e)      failing to turn over to Premier all manuals, records, files, instructions, correspondence and other materials relating to Top Gun's operation of the Store, including customer records; and

(f)      for a period of one year from the date of entry of such injunction, operating a rent-to-own business at the former location of the Store, within

the DMA of the Store or within the DMA of any other PREMIER rent-to-own store;

(g)     committing any other act that infringes the PREMIER Marks or otherwise unfairly competes with Premier or the Premier franchise system.

4.     Ordering the defendants to file with the Court and serve on counsel for Premier and TPC, within five (15) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

5.     Awarding Premier and TPC, pursuant to 15 U.S.C. §1117, (a) the defendants' profits, (b) Premier's and TPC's damages, and (c) the costs of the action;

6.     Awarding Premier and TPC treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b);

7.     Ordering specific performance against the defendants of the post-expiration obligations in the Franchise Agreement;

8.     Awarding Premier and TPC the amount by which the defendants have been unjustly enriched by their conduct;

9.     Awarding Premier and TPC their costs in prosecuting these claims, including their reasonable attorneys' fees incurred, in accordance with the Franchise Agreement and applicable law; and

10.     Such other and further relief as the Court may deem appropriate.

Benjamin B. Reed
Virginia Bar No. 78190
breed@plavekoch.com
James C. Rubinger
Virginia Bar No. 20317
jrubinger@plavekoch.com
PLAVE KOCH PLC
12355 Sunrise Valley Drive, Suite 230
Reston, Virginia  20191
703-774-1200 (phone)
703-774-1201 (fax)

*Attorneys for Plaintiffs Premier Rental-
Purchase, Inc. and The Premier Companies,
Inc.*

January 15, 2013